NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**LESEMAN, LLC,**
*Plaintiff-Appellant*

**v.**

**STRATASYS, INC.,**
*Defendant-Appellee*

---

2017-1453

---

Appeal from the United States District Court for the District of Minnesota in No. 0:14-cv-00363-SRN-SER, Judge Susan Richard Nelson.

---

Decided: April 18, 2018

---

DEVAN V. PADMANABHAN, Winthrop & Weinstine, PA, Minneapolis, MN, argued for plaintiff-appellant. Also represented by PAUL J. ROBBENNOLT, SRI SANKARAN, NADEEM WILLIAM SCHWEN.

TIMOTHY E. GRIMSRUD, Faegre Baker Daniels LLP, Minneapolis, MN, argued for defendant-appellee. Also represented by KENNETH LIEBMAN, KATHERINE S. RAZAVI, LAUREN MARIE WILLIAMS STEINHAEUSER.

---

Before PROST, *Chief Judge,* MOORE, and REYNA, *Circuit Judges.*

MOORE, *Circuit Judge.*

Leseman, LLC, appeals the U.S. District Court for the District of Minnesota's final judgment of non-infringement based on the court's construction of two terms in claims 1–3 of U.S. Patent No. 7,329,113 ('113 patent). For the reasons discussed below, we *affirm* the final judgment.

BACKGROUND

The '113 patent is directed to an extrusion die with die components "that are adjustable along a longitudinal axis in which the material being extruded travels." '113 patent at 1:10–13. During extrusion, a substrate and an extrusion material converge in a channel of an extrusion die, which causes the extrusion material to coat a surface of the substrate. *Id.* at 1:38–43. According to the '113 patent, "the configuration of the extrusion die channel [is] generally fixed along the longitudinal axis in which the substrate and the extrusion material flow," so the die must be retooled or the flow settings of the extrusion material adjusted to change the properties of an extrusion. *Id.* at 1:38–40, 1:60–2:9.

To overcome this perceived problem, the '113 patent discloses an extrusion die with die components that are adjustable along the longitudinal axis. *Id.* at 1:10–13, 6:49–55. The exemplary die includes a first die component, a second die component received within a downstream side of the first die component, and a third die component received within a downstream side of the second die component. *Id.* at 3:24–26, 4:1–2, 4:44–45. The relative positions of the second and third die components are adjustable along the longitudinal axis. *Id.* at 4:2–16, 4:45–60. This adjustability permits changes to

the flow of the extrusion material without having to retool or replace the die or change the properties of the extrusion material. *Id.* at 6:49–55. As a result, it "reduc[es] the time required to develop a suitable extrusion die to form a new product and to adapt to changing extrusion materials." *Id.* at 6:55–58.

Leseman sued Stratasys, Inc., alleging infringement of claims 1–3 of the '113 patent. Claim 1 is representative and recites:

> 1. An extrusion die assembly configured to process a flow of extrusion material traveling in a downstream direction, the assembly comprising:
>
>> a first die component having a first channel substantially coaxial to a longitudinal axis;
>>
>> a second die component received within a downstream side of the first die component and having a position that is adjustable along the longitudinal axis relative to the first die component, the second die component having a second channel that is substantially coaxial to the longitudinal axis; and
>>
>> a third die component received within a downstream side of the second die component and having a position that is adjustable along the longitudinal axis relative to the second die component, the third die component having a third channel that is substantially coaxial to the longitudinal axis.

Following the district court's claim construction orders, the parties stipulated to non-infringement of claims 1–3. Leseman appeals the court's judgment on the

grounds that its constructions were erroneous. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

Because the district court did not make any subsidiary fact findings, we review its constructions de novo. *David Netzer Consulting Eng'r LLC v. Shell Oil Co.*, 824 F.3d 989, 993 (Fed. Cir. 2016). The words of a claim "are generally given their ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc). To determine the ordinary meaning, we look to the claim language, the specification, the prosecution history, and, where necessary, extrinsic evidence. *Id.* at 1314, 1319.

The parties dispute whether the claims cover an extrusion die where the relative positions of the die components can be changed, but only after disassembling the extrusion die. To argue that they do so, Leseman points to "adjustable" and "and" within the term "a [second/third] die component received within a downstream side of the [first/second] die component *and* having a position that is *adjustable* along the longitudinal axis relative to the [first/second] die component." The district court construed "adjustable" to mean "movable, without removal of the [second/third] die component." *Leseman, LLC v. Stratasys, Inc.*, No. 14-cv-363, 2016 WL 6871372, at *9 (D. Minn. May 17, 2016). It construed "and" to require that the [second/third] die component remain "received within a downstream side" of the [first/second] die component "before, during, and after adjustment." J.A. 53–54. Leseman argues these constructions depart from the ordinary meaning of the claim language.

We agree with the district court's constructions and hold that the claims require that the [second/third] die component be movable, without removal from the down-

stream side of the [first/second] die component. The preamble to claim 1, which both parties agree is limiting, J.A. 137, requires "[a]n extrusion die *assembly* configured to process a flow of extrusion material traveling in a downstream direction." The "assembly" comprises a second and third die component having adjustable positions. This language requires that the positions of these die components be movable while the extrusion die remains assembled. Assembled in this context includes that the [second/third] die component be "received within" a downstream side of the [first/second] die component. The phrase "along the longitudinal axis," which modifies "adjustable," further supports this construction. This phrase does not merely require looking at the positions of the die components both before and after an adjustment. Instead, "along the longitudinal axis" indicates the manner in which an adjustment occurs. That is, the die components remain on the longitudinal axis during and after adjustment. Further, the word "and" is conjunctive, meaning the [second/third] die component must both be "received within a downstream side of the [first/second] die component and hav[e] a position that is adjustable along the longitudinal axis relative to the first die component." We conclude that the claims require that the [second/third] die component be movable without removal from the downstream side of the [first/second] die component.

Leseman argues the die components are "adjustable along the longitudinal axis" if the extrusion die can be disassembled and the positions of the second and third die components can be switched or additional components can be inserted between the die components. But these are the types of "time-consuming" modifications to the extrusion die that the specification criticizes. *See* '113 patent at 7:47–53. The specification states that the ability to adjust the relative positions of the die components along the longitudinal axis allows the flow properties of the

extrusion material to be controlled without having to retool or replace the die. *Id.* at 6:49–55; *id.* at 7:47–53; *see also id.* at 4:5–13, 4:48–57. The specification's use of "present invention" language to distinguish its extrusion die from those that require retooling or replacement further confirms this conclusion. *Id.* at 6:49–55; *id.* at 7:47–53. This language is strong evidence that the claims should not be read to cover such retooling or replacement. *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343 (Fed. Cir. 2001). The specification thus supports the conclusion that die components "adjustable along the longitudinal axis" are limited to those that are movable along the longitudinal axis without removal from the downstream side of the previous die component. The modifications that Leseman seeks to encompass within the claims are more akin to the retooling or replacement criticized in the specification and are not part of the scope of the claims.

We find Leseman's remaining arguments unpersuasive.

CONCLUSION

For the foregoing reasons, we *affirm* the district court's final judgment that Stratasys does not infringe claims 1–3 of the '113 patent.

**AFFIRMED**